The STATE of Ohio, Appellee,

v.

CLITES, Appellant.

[Cite as *State v. Clites* (1991), 73 Ohio App.3d 36.]

Court of Appeals of Ohio,
Portage County.

No. 90–P–2189.

Decided April 2, 1991.

*David W. Norris,* Prosecuting Attorney, and *James R. Carnahan,* for appellee.

*R.J. Kane,* for appellant.

---

NADER, Judge.

This appeal is from the trial court's decision, finding appellant, William Clites, guilty of driving under suspension in violation of R.C. 4507.02, and was submitted to this court on the briefs of counsel.

On July 2, 1989, Officer Gyoker, a Brimfield Township patrolman, observed appellant traveling north on State Route 43 at approximately 1:56 a.m. The officer testified that he observed the appellant's automobile "straddling both northbound lanes" or otherwise "traveling down the middle of the road." As appellant proceeded onto the entrance ramp of Interstate 76, the wheels of the automobile went beyond the right edge line by several feet. As Officer Gyoker continued to follow appellant, he observed the automobile "jerk" beyond the edge line and weave within its own lane.

Appellant was then pulled over and Officer Gyoker requested the production of his driver's license. Appellant did not produce a driver's license, and the officer testified that appellant's eyes were bloodshot, his speech slurred, and that appellant had a moderate odor of alcohol about his person. The arresting officer further stated that appellant admitted drinking four or five beers and performed poorly on several field sobriety tests. Based on these observations, the officer testified that he concluded that appellant was not capable of continuing driving, and placed him under arrest for driving under the influence in violation of R.C. 4511.19A(1).

As appellant was without his driver's license, the officer ran a check of his driving status by calling in pertinent information, such as the arrestee's date of birth and social security number, to the radio dispatcher. Based on the information he received, the officer then arrested appellant for driving under suspension in violation of R.C. 4507.02, and requested the dispatcher to obtain certified copies of appellant's driving record.

At trial, over appellant's objections, the copies of appellant's driving record were entered into evidence. Appellant also attacked the officer's testimony based on the inconsistencies with the testimony, apparently given by the officer, at a suppression hearing on January 30, 1990, although the record does not include an entry on the motion to suppress.

At the close of the presentation of the state's evidence, appellant moved for a directed verdict, and the court, construing the evidence most favorably to

the state, denied the motion. After a brief recess, appellant rested without putting forth any evidence, and the court found appellant not guilty as to the charge of drunk driving, and guilty as to the charge of driving under suspension. It is from this order that appellant appeals, raising the following assignment of error:

"The trial court erred in accepting improperly and inadmissible evidence being introduced into the record." (*Sic.*)

At trial, appellant objected to the admission of appellee's Exhibit A, purported records of the Bureau of Motor Vehicles. Appellant asserted several grounds for his objections. He found it objectionable that the documents lacked a proper seal, and that the signature was not the signature of the registrar, Michael J. McCullion. Appellant also argued that it was improper to attach several papers to the certificate attesting to the attachments' correctness.

■ The signature of the attesting officer, Florence Shepherd, was not improper, as the rule allows a deputy of the custodian of the records to certify the correctness of the copies. Evid.R. 902(4), concerning self-authentication of documents, provides that no extrinsic evidence of authenticity is required for copies of official records " * * * certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any law of a jurisdiction, state or federal, or rule prescribed by the Supreme Court of Ohio."

The certification under paragraphs (1) and (2) involve the use of a seal, while paragraph (3) involves foreign documents. In the absence of any evidence to the contrary, the trial court could properly presume the authority of Florence Shepherd, and therefore appellant's assertion lacks merit.

■ Appellant argues that it was improper to attach several copies to the certification by a simple staple. However, this method of certification, although criticized, was held not to constitute error by the trial court in *State v. Morrison* (1982), 2 Ohio App.3d 364, 369, 2 OBR 421, 426, 442 N.E.2d 114, 120. In the absence of any assertion of tampering or evidence contradicting the purported records' correctness, the trial court did not err in approving the method of certification, and, therefore, this argument by appellant is also without merit.

Appellant's final contention is that the exhibits were improperly authenticated due to a lack of an official seal. Appellant argued at trial that it was impossible to read the impression of the seal, and the following dialogue occurred:

"BY THE COURT:

"The court will overrule your objections. According to the statute if the seal is on it, and this appears to be a very bad seal. I can see the lines normally present on a seal and the document is self authenticating, according to the statute, so, I overrule and that will be admitted.

"MR. KANE:

"I would ask the Court, please, what the Court sees on that seal, so that, I can have it on the record, what the Court actually sees.

"BY THE COURT:

"There is a broken star line that goes around, double broken star line, appears to be like a notary seal. Based on that, I will rule it is a seal and having seen sealed documents and knowing some touch down harder than others."

Appellant urges this court to expand its decision concerning Evid.R. 902(4) in *Kent v. Utt* (May 19, 1989), Portage App. No. 88–P–2008, unreported, which, at 5, states:

"Of the three paragraphs mentioned in relation to certification, only (1) or (2) would apply as Evid.R. 902(3) deals with foreign public documents. Under the former two paragraphs, the certification must be accompanied by a seal before the copies would be self-authenticating. The test report forms in this case do not have the required seal and are accordingly inadmissible without extrinsic evidence. *State v. Fox* (Oct. 23, 1987), Van Wert App. No. 15–86–13, unreported."

Appellant contends that a logical extension of *Utt, supra,* requires the impression of the seal to be legible. While the case law on the subject of the sufficiency of a seal's impression is rather sparse, there are two cases which, at first glance, appear to support the trial court's decision. *Heighway v. Pendleton* (1846), 15 Ohio 735, 752, and *Sparrow v. Hovey* (1879), 41 Mich. 708, 3 N.W. 198. However, each of these cases is readily distinguishable from the instant case. In *Heighway, supra,* the illegibility was due to the lapse of thirty years, and in *Sparrow, supra,* the only imperfection was that the commissioner's last name was not reproduced by the impression.

The Staff Note to Evid.R. 902 indicate that the purpose behind the use of a seal is to prevent forgery, as they, in part, state:

"The likelihood of a forgery of a public document under seal is minimal, but the possibility of a forgery of a signed public document not under seal is somewhat greater. * * * *"

Thus, in order to be self-authenticating, the certification of the copy of a public document must eliminate the possibility of forgery by the use of a seal. This purpose is defeated when the trial court finds a seal is present based on minimal indicia of its impression.

If a seal is to prevent forgery, the impression must allow for the identification of its maker when its authenticity is questioned. *Mason v. Brock* (1850), 12 Ill. 273, 277, states:

"The statute is silent as to the form and character of the seal. He may adopt a seal, with such an inscription as his judgment may dictate, or his fancy may suggest. It must, however, be capable of making a definite and uniform impression on the paper on which a certificate is written, or on some tenacious substance attached thereto, so that when a question arises as to the genuineness of an authentication, it may be determined by reference to the seal in the possession of the officer."

Finally, the United States Supreme Court approved the practice of making the seal's impression directly on the paper in *Pillow v. Roberts* (1851), 54 U.S. (13 How.) 472, 473–474, 14 L.Ed. 228, stating:

" * * * The impression made by such a power on paper is as well defined, as durable, and less likely to be destroyed or defaced by vermin, accident, or intention, than that made on wax. It is the seal which authenticates, and not the substance on which it is impressed; and where the court can recognize its identity, they should not be called upon to analyze the material which exhibits it. * * * "

Therefore, the trial court erred in allowing its experience with seals and the slight impression present in this case to be sufficient to find the document in question self-authenticated.

■ While the trial court incorrectly admitted the documents into evidence under Evid.R. 902(4), the sufficiency of the evidence to allow the document to come in under Evid.R. 901 must be analyzed. Evid.R. 901(A) states:

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

Evid.R. 901(B)(4) lists as examples of acceptable methods of authentication:

"Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances."

Evid.R. 901(B)(7) lists another method of authentication:

"Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report,

statement or data compilation, in any form, is from the public office where items of this nature are kept."

Examples of the document's appearance which may authenticate a document under illustration B(4) are set forth in *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.* (E.D.Penn.1980), 505 F.Supp. 1190, 1220 (citing 5 Weinstein's Evidence (1978), 901(B)(1)[01]) states:

"Weinstein gives as examples of the types of appearance the courts may wish to consider: a postmark, a return address, a letterhead, a signature even where affixed by a rubber stamp, typing or form which corresponds to usual practice.  * * * "

In the instant case, the documents were attached to a certification attesting that they were true and accurate copies of the records of the Ohio Bureau of Motor Vehicles.  The certification, as well as several of the attachments, was on the letterhead of the Bureau of Motor Vehicles, and the seal of that state department was reprinted on the letterhead.  The certification was signed by a purported deputy of that department, and a slight impression of a seal (although we can not tell whose seal or by whom it was made) was also present.

The officer testified that he submitted appellant's pertinent information to the Bureau of Motor Vehicles.  The testimony further established a chain of custody of the documents he received in the mail in response to his request for appellant's driving record.  However, the evidence is insufficient to authenticate the documents by extrinsic evidence, as it lacks evidence similar to that lacking in *Utt, supra.*

"For example, the calibrating officer could have testified as to the copies' authenticity under Evid.R. 901(B)(1).  However, the arresting officer could not testify to this as it was not a matter within his knowledge.  He may have known of the log book, who was in charge of it, and what the test forms looked like, but he could not state whether the documents before the trial court were copies of the *relevant* log entries, unless he was present when the copies were made." (Emphasis *sic.*)  *Id.* at 6.

In the instant case, the extrinsic evidence may sufficiently demonstrate that the documents came from the Bureau of Motor Vehicles, but it can not verify that the proper records were copied by the bureau.  In the absence of such authenticating extrinsic evidence, it constituted prejudicial error by the trial court to admit the document into evidence based on an unintelligible, or otherwise illegible seal.  Therefore, the decision of the trial court is hereby

reversed and remanded for further proceedings not inconsistent with this opinion.

*Judgment accordingly.*

FORD, P.J., concurs.

CHRISTLEY, J., dissents.

CHRISTLEY, Judge, dissenting.

I respectfully dissent.

Here, although the seal was partially illegible, there were sufficient indicia for the trial court to determine that a seal had been attempted, and that the document was, therefore, self-authenticating under Evid.R. 902(4). Further, there was no argument or evidence offered indicating forgery or inaccuracy of the purported record.

I would, therefore, affirm.