The STATE of Ohio, Appellee,

v.

LAKE, Appellant.

[Cite as *State v. Lake,* 151 Ohio App.3d 378, 2003-Ohio-332.]

Court of Appeals of Ohio,
Seventh District, Noble County.

No. 294.

Decided Jan. 24, 2003.

380

Clifford N. Sickler, Noble County Prosecuting Attorney, for appellee.

Paul E. Lake, pro se.

DeGENARO, Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-appellant, Paul E. Lake, appeals from the decision of the Noble County Court of Common Pleas denying his motion to suppress the results of his breath test, which established that his blood alcohol content ("BAC") was .170. We are asked to decide whether the state proved substantial compliance with the Ohio Department of Health's regulations concerning the calibration of the BAC testing device. We find that the state failed to prove substantial compliance with the regulations as the copies of the calibration solution certificates used to demonstrate substantial compliance were inadmissible pursuant to Evid.R. 1005. Thus, the trial court's decision is reversed, appellant's conviction is vacated and this case is remanded for further proceedings.

{¶ 2} State Highway Patrol Trooper Timothy Scott was driving southbound on State Route 339 in Noble County, Ohio, when he passed a vehicle with a loud exhaust moving in the opposite direction. He turned his vehicle around and proceeded to stop the other vehicle. After Trooper Scott approached the vehicle, he noticed that the driver, Lake, had red, glassy eyes and his speech was slow and quiet. Trooper Scott also smelled a strong odor of alcohol about Lake. He ordered Lake out of the vehicle, patted him down, and ordered Lake to perform the three accepted field sobriety tests, horizontal gaze nystagmus, walk-and-turn, and one-leg stand. Based on the results of those tests and his previous observations, Trooper Scott arrested Lake for driving under the influence of alcohol. Trooper Scott brought Lake to the local police department where he administered a breath test. Lake registered a .170.

{¶ 3} Subsequently, the Noble County Grand Jury issued an indictment charging Lake with DUI. The indictment contained a specification that Lake had been convicted of three other DUI offenses in the previous six years at the time of the offense, making this offense a felony of the fourth degree. Lake pled not guilty to the charges.

{¶ 4} After Lake was appointed counsel, he filed a motion to suppress, claiming that his breath test should be suppressed because the state could not prove that the machine used to conduct the test was properly calibrated in accordance with the Ohio Administrative Code. The trial court heard the motion to suppress. At the conclusion of the hearing, the state moved to admit its exhibits, including copies of two certificates which certified the solution used to calibrate the machines. The trial court allowed those documents into evidence over Lake's objections. After allowing the parties to file post-hearing briefs, the trial court denied Lake's motion to suppress.

{¶ 5}  Subsequently, Lake entered a plea of no contest.  The trial court found Lake guilty, sentenced him to six months in the Noble County jail, and fined him $800.  The trial court also placed Lake on five years of community control, ordered the vehicle he used while committing the offense seized, and ordered his license suspended for five years.

{¶ 6}  We reverse the trial court's decision which denied Lake's motion to suppress because the state failed to prove substantial compliance with the applicable regulations governing the calibration of the breath test machine.  The state presented copies of the calibration solution certificates, but did not demonstrate their admissibility pursuant to Evid.R. 1005.  Without these certificates, the state could not prove substantial compliance with the regulations.  Thus, the results of the breath test should have been suppressed.

{¶ 7}  As a preliminary matter, we note that Lake has properly preserved his arguments for appeal by pleading no contest to the charges against him.  According to Crim.R. 12(I), a "plea of no contest does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion, including a pretrial motion to suppress evidence."

{¶ 8}  In Lake's two assignments of error, he challenges the trial court's actions in relation to his motion to suppress the BAC breath test results as follows:

{¶ 9}  "The trial court erred in admitting into evidence, at the suppression hearing, two instrument check solution documents which were not authenticated pursuant to the Ohio Rules of Evidence."

{¶ 10}  "The trial court erred in denying Appellant's motion to suppress the BAC Datamaster test results when the State failed to produce proper evidence at the hearing of its compliance with the Ohio Department of Health Regulations for calibration of the machine."

{¶ 11}  In his assignments of error, Lake argues that the trial court erred when it determined that the copies of the calibration solution certificates introduced into evidence were admissible as they did not comply with the Rules of Evidence.  Because these documents were inadmissible, he argues, the state failed to prove compliance with the Ohio Department of Health's regulations and, therefore, the results of the BAC test were inadmissible.

{¶ 12}  Appellate review of a motion to suppress presents mixed issues of law and fact.  *State v. Jedd* (2001), 146 Ohio App.3d 167, 171, 765 N.E.2d 880. When conducting that review, appellate courts must accept a trial court's findings of fact if they are supported by competent, credible evidence.  *State v. Winand* (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9. Accepting those facts as true, we must then independently determine whether the trial court's decision met the

applicable legal standard. *State v. Santini* (2001), 144 Ohio App.3d 396, 406, 760 N.E.2d 442. However, decisions dealing with the admissibility of evidence are left to the trial court's sound discretion. *State v. Tibbetts* (2001), 92 Ohio St.3d 146, 160, 749 N.E.2d 226. Unless the trial court clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the trial court's decision. *State v. Issa* (2001), 93 Ohio St.3d 49, 64, 752 N.E.2d 904. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 13} R.C. 3701.143 authorizes the Department of Health to promulgate regulations concerning chemical analysis of a person's blood, urine, breath, or other bodily substances in order to ascertain the presence and amount of alcohol. Accordingly, the Department of Health has promulgated Ohio Adm. Code 3701–53–04 through 3701–53–09. It is incumbent upon the state to demonstrate compliance with those regulations before the results of a breath test given to an accused are admissible in evidence against a criminal defendant. *State v. Pagan* (Nov. 10, 1999), 7th Dist. No. 97 CA 80, at 2, 1999 WL 1029508. However, the state need only prove substantial compliance with the administrative regulations. *State v. Plummer* (1986), 22 Ohio St.3d 292, 294, 22 OBR 461, 490 N.E.2d 902. Once the state proves substantial compliance, then the defendant has the burden of proving prejudice by less than literal compliance. Id. at 295, 22 OBR 461, 490 N.E.2d 902.

{¶ 14} Ohio Adm.Code 3701–53–04(A) requires that the breath testing machine be calibrated "no less frequently than once every seven days" by using "an instrument check solution containing ethyl alcohol approved by the director of health." In order to demonstrate that the instrument check solution used to calibrate the machine was approved by the director of health, the director must produce a document certifying that the solution used to calibrate the machine was proper. *Columbus v. Robbins* (1989), 61 Ohio App.3d 324, 328, 572 N.E.2d 777. In order to comply with this requirement, the state commonly produces a "batch and bottle affidavit" or a properly authenticated calibration solution certificate. *Pagan* at 2.

{¶ 15} "The admission of this affidavit or authenticated certificate demonstrates that the breath testing equipment was calibrated in substantial compliance with the applicable Department of Health regulations and assures the accuracy of the breath test results. *City of Columbus v. Carroll* ( [Aug. 27] 1996), Franklin App. No. 96APC01–90, unreported [1996 WL 492979]. The importance of this point cannot be overstated since the accuracy of the test results is a

critical issue in determining the guilt or innocence of the defendant. *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 3 [573 N.E.2d 32]. Conversely, when there is no properly authenticated certificate or an affidavit regarding the viability of the calibration solution, substantial compliance with the regulations is not proven and the results of the breath test must be excluded. *State v. Bauer* (September 13, 1996), Ottawa App. No. OT–95–050, unreported [1996 WL 520057], citing *Robbins,* supra at 328 [572 N.E.2d 777]." *Pagan* at 3.

{¶ 16} Evid.R. 901(A) states that all evidence must be properly authenticated before it is admissible into evidence. Authentication lays the foundation for admissibility by connecting the particular evidence sought to be introduced to the issues or persons involved in the trial. Staff Note to Evid.R. 901(A). Exhibits are properly authenticated when there is evidence sufficient to support a finding that the matter in question is what the proponent claims. *Hall v. Johnson* (1993), 90 Ohio App.3d 451, 455, 629 N.E.2d 1066. Authenticity is normally demonstrated by extrinsic evidence unless the evidence is self-authenticating as provided in Evid.R. 902. For example, an original calibration solution certificate is self-authenticating under Evid.R. 902(1) as it is a public document bearing the seal of the Ohio Department of Health. However, the authenticity of a letter must be proven by, for instance, its distinctive characteristics or the testimony of a witness with knowledge that the letter is what it is claimed to be. See *State v. Brown,* 151 Ohio App.3d 36, 2002-Ohio-5207, 783 N.E.2d 539, ¶ 38; Evid.R. 901(B)(1), (4).

{¶ 17} The trial court admitted the certificates into evidence pursuant to Evid.R. 1003. Evid.R. 1003 provides that a duplicate is admissible to the same extent as the original unless a genuine question is raised as to the authenticity of the original or it would be unfair to admit the duplicate in lieu of the original. This does not place any limitations on how a party may authenticate a document, instead allowing all duplicates into evidence *to the same extent* as the original. Thus, this allows a party to authenticate a duplicate in any manner authorized under the law.

{¶ 18} In contrast, Evid.R. 1005 provides as follows:

{¶ 19} "The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form if otherwise admissible, may be proved by copy, certified as correct in accordance with Rule 902, Civ.R. 44, Crim.R. 27 or testified to be correct by a witness who has compared it with the original. If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given."

{¶ 20} This specifically defines the types of extrinsic evidence a party must use to prove the authenticity of a particular public record before that record is admissible. See *Robbins*; *Pagan*; *Bauer.*

{¶ 21} If copies of public records were admissible pursuant to Evid.R. 1003, then Evid.R. 1005's specification of the ways in which a copy of a public record may be authenticated would be rendered meaningless. Accordingly, the calibration solution certificates the state attempted to introduce into evidence must be admissible pursuant to Evid.R. 1005.

{¶ 22} These certificates are not authenticated in the manner provided by Evid.R. 1005. Evid.R. 902(4) provides that a copy of a public document is self-authenticating when it is "certified as correct by the custodian or other person authorized to make the certification * * *." Crim.R. 27 allows for proof of official records as provided in Civ.R. 44. Civ.R. 44 states that a copy of a domestic official record is authenticated when the officer having the legal custody of the record attests to the copy's authenticity. These calibration solution certificates were not certified as provided in those rules. Finally, no witnesses in this case testified that they compared the copies with the originals.

{¶ 23} Because the state did not demonstrate the admissibility of these certificates in the manner provided by Evid.R. 1005, it was improper for the trial court to admit them into evidence during the suppression hearing. Accordingly, the state did not prove substantial compliance with Ohio Adm.Code 3701–53–04 and the results of the breath test should have been suppressed. Lake's assignments of error are meritorious. The trial court's decision is reversed, appellant's conviction is vacated, and this cause is remanded to the trial court for further proceedings.

Judgment accordingly.

GENE DONOFRIO, J., concurs.

WAITE, J., dissents.

WAITE, Judge, dissenting.

{¶ 24} I must respectfully dissent from part of the analysis the majority uses to resolve this case, and with the ultimate resolution of the case. I conclude that the calibration solution certificates would not have been admissible under Evid.R. 902, but would have been admissible under Evid.R. 1005. I also conclude that, even if the calibration solution certificates were not properly authenticated pursuant to Evid.R. 902 and 1005, the proper time for appellant to raise the issue of authenticity was at trial in order to preserve the matter as an appealable issue.

{¶ 25} Appellant's two assignments of error assert:

{¶ 26} "The trial court erred in admitting into evidence, at the suppression hearing, two instrument check solution documents which were not authenticated pursuant to the Ohio Rules of Evidence.

{¶ 27} "The trial court erred in denying appellant's motion to suppress the BAC Datamaster test results when the state failed to produce proper evidence at the hearing of its compliance with the Ohio Department of Health Regulations for calibration of the machine."

{¶ 28} These two assignments of error are part of one single assertion, namely, that appellee did not provide sufficient evidence at the motion to suppress hearing to show that the state complied with the procedures for obtaining a valid breathalyzer test result.

{¶ 29} Appellant was indicted on February 13, 2001, on one count of driving under the influence of alcohol ("DUI") in violation of R.C. 4511.19(A)(6). The charge had a felony specification, alleging that appellant had three prior DUI convictions within six years. R.C. 4511.99(A)(8)(a)(i). The charge was based on events which occurred on October 9, 2000.

{¶ 30} On April 17, 2001, appellant filed a motion to suppress. Two of the issues appellant raised in his motion to suppress were whether the breathalyzer machine used to calculate appellant's breath-alcohol content had been properly calibrated, and whether the alcohol solution that was used to calibrate the machine was properly maintained. A hearing on the motion to suppress was held on June 11, 2001. At the hearing, appellee produced copies of the calibration solution certificates that corresponded with the bottles of alcohol solution used to calibrate the BAC Datamaster machine. Appellee requested that the court "conditionally accept" the exhibits until the certified copies of the documents arrived.

{¶ 31} Appellant objected to the introduction of these documents on the basis that they were not properly authenticated. Appellant argued that the suppression hearing was equivalent to the actual trial, and that appellee was required to provide the same evidence that would have been required at trial.

{¶ 32} The trial court asked both parties to brief the evidentiary issues. The court overruled appellant's motion to suppress on July 10, 2001. The court held that the calibration solution certificates were admissible as duplicates under Evid.R. 1003. The court ruled that there were no questions raised as to the authenticity or reliability of the duplicates. The court then held that the duplicates were self-authenticating under Evid.R. 902(A). There is no Evid.R. 902(A), but we assume that the court was referring to Evid.R. 902(1).

{¶ 33} Appellant subsequently pleaded no contest to the charge, and this timely appeal followed.

{¶ 34} The overall question on appeal is whether the trial court should have granted the motion to suppress. Appellant questions whether appellee provided the trial court with enough of an evidentiary basis to overrule the motion. Specifically, appellant believes that appellee did not properly authenticate the calibration solution certificates, and in failing to do so, failed to provide a basis for admitting the breathalyzer test results.

{¶ 35} With respect to motions to suppress, the appropriate standard of review is to determine whether the trial court's findings are supported by competent credible evidence. *State v. Lloyd* (1998), 126 Ohio App.3d 95, 709 N.E.2d 913, citing *State v. Winand* (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9. Although deference is given to the trial court's finding of facts, we must independently determine whether the trial court met any applicable legal standards. *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141.

{¶ 36} Appellant was charged with DUI in violation of R.C. 4511.19(A)(6). This part of the DUI statute involves strict liability and, therefore, the state only needs to prove that appellant was operating a motor vehicle in Ohio and that his breath-alcohol content was at the prescribed level. *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 5–6, 573 N.E.2d 32. The accuracy of the chemical test results is critical in determining the outcome of the case. *Id.*

{¶ 37} Ohio has very detailed administrative procedures for obtaining valid chemical test results in DUI cases. Ohio Adm.Code 3701–51–01 et seq. A defendant who wishes to challenge the admissibility of chemical test results in a DUI case must first raise the challenge in a pretrial motion to suppress. *State v. French* (1995), 72 Ohio St.3d 446, 650 N.E.2d 887, paragraph one of syllabus. Once the defendant has properly notified the state of the specific nature of the evidentiary challenge, the state must prove that it substantially complied with the appropriate administrative regulations set forth by the Ohio Department of Health ("ODH") in order for breath test results to be admissible as evidence in a DUI case. *State v. Plummer* (1986), 22 Ohio St.3d 292, 294, 22 OBR 461, 490 N.E.2d 902.

{¶ 38} Appellant clearly notified appellee that he was challenging the calibration of the breathalyzer machine and more specifically, the reliability of the alcohol solution used to calibrate the machine. The burden was on appellee to show substantial compliance with the ODH regulations. Ohio Adm.Code 3701–53–04(A)(1) requires that a breathalyzer be checked at least every seven days with an ethyl alcohol solution approved by the director of the ODH. In most cases the state may establish the validity of the ethyl alcohol solution by submitting documentary evidence in the form of a "batch and bottle" affidavit or a calibration solution certificate from the ODH. *State v. Pagan* (Nov. 10, 1999), 7th Dist. No. 97 CA 80, 1999 WL 1029508. The state must ultimately produce an authenticated

calibration solution certificate, an authenticated batch and bottle affidavit, or some other admissible evidence to prove compliance with ODH regulations. Id.

{¶ 39} Appellant's argument on appeal is that the calibration solution certificates were not properly authenticated. The trial court concluded that the photocopies of the calibration solution certificates should be treated as if they were original documents, and that the original documents would have been self-authenticating under Evid.R. 902(1), which deals with public documents bearing a state seal. The majority completely sidesteps the key issues in this case, namely, whether a photocopy of a state seal is admissible to the same extent that the actual seal would be, and whether the copies would be self-authenticating under Evid.R. 902(1). I conclude that a photocopy of a state seal is not the equivalent of the seal itself for purposes of Evid.R. 902(1). I also agree with the majority that the photocopies of the calibration solution certificates were not properly authenticated under any other provision of Evid.R. 902.

{¶ 40} Evid.R. 1003 states: "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

{¶ 41} Evid.R. 1003 does not provide for the authentication of a document, but rather, addresses only the circumstances under which a duplicate may be treated as an original document. Even if the duplicate is deemed to be an original, the document must be authenticated as part of the process of being admitted into evidence. *State v. Bolden* (Dec. 3, 2001), 5th Dist. No. 00 CA 90, 2001 WL 1548779; *State v. Carter* (Sept. 26, 2000), 4th Dist. No. 99CA2479, 2000 WL 1466189.

{¶ 42} Authentication is governed in part by Evid.R. 901 et seq. Evid.R. 901(A) states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

{¶ 43} Evid.R. 902 also governs the authentication of public records. If the requirements of Evid.R. 902 are met, a document is "self-authenticating," meaning that no other extrinsic evidence is required to authenticate the document.

{¶ 44} Evid.R. 902(1) provides:

{¶ 45} "Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

{¶ 46} "(1) Domestic public documents under seal

{¶ 47} "A document bearing a seal purporting to be that of the United States, or of any State, district, Commonwealth, territory, or insular possession thereof,

or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution."

{¶ 48} Evid.R. 902(1) provides for self-authentication if the document itself bears an official seal of a public officer or office, and if the document bears a signature purporting to be an attestation or execution of the document.

{¶ 49} The trial court concluded that the copies of the calibration solution certificates satisfy the requirements Evid.R. 902(1). I do not agree with this conclusion.

{¶ 50} First, Evid.R. 902(1) would be thwarted if a photocopy of an official seal could be treated as the original seal in order to make the document self-authenticating. The Staff Notes to Evid.R. 902 indicate that the purpose behind the use of a seal is to prevent forgery: "The likelihood of a forgery of a public document under seal is minimal, but the possibility of a forgery of a signed public document not under seal is somewhat greater." I agree with the holding of the Eleventh District Court of Appeals when it stated that, "in order to be self-authenticating, the certification of the copy of a public document must eliminate the possibility of forgery by the use of a seal. This purpose is defeated when the trial court finds [that] a seal is present based on minimal indicia of its impression." *State v. Clites* (1991), 73 Ohio App.3d 36, 40, 596 N.E.2d 550.

{¶ 51} The seal referred to in Evid.R. 902(1) is a three-dimensional object, either an impression made on a document or an impression made on an adhesive label which is then affixed to a document. R.C. 5.11; *Clites*, supra, 73 Ohio App.3d at 40, 596 N.E.2d 550. By its very nature it cannot be photocopied because a photocopy is not a three-dimensional representation. Therefore, I would hold that a photocopied representation of an official seal cannot be treated as the equivalent of the actual seal.

{¶ 52} My conclusions concerning Evid.R. 902(1), though, do not require a reversal in this case. There is another evidentiary rule that allowed the trial court to accept the photocopies in lieu of the originals for purposes of the suppression hearing under the facts of this case. Evid.R. 1005 states:

{¶ 53} "The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form if otherwise admissible, may be proved by copy, certified as correct in accordance with Rule 902, Civ.R. 44, Crim.R. 27 or testified to be correct by a witness who has compared it with the original. If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given."

{¶ 54} Evid.R. 1005 governs not only the admissibility of official records, but also the authentication of those records. Evid.R. 1005 allows authenticity to be proven by the testimony of a witness who has compared the document to the original, or by Evid.R. 902, Crim.R. 27, or Civ.R. 44. Assuming that the two calibration solution certificates at issue could not be authenticated by any of the methods just mentioned, Evid.R. 1005 also allows the contents of the official record to be proven by "other evidence" if, "a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence * * *." There is evidence in the record that appellee used reasonable diligence to obtain self-authenticating versions of the documents, and that appellee submitted only the nonconforming photocopies because the self-authenticating copies did not arrive in time for the hearing on appellant's motion to suppress.

{¶ 55} Furthermore, even if we assume that the copies of the calibration solution certificates did not satisfy Evid.R. 902(1) for purposes of trial, they represented adequate evidence for purposes of a motion to suppress chemical test results in a DUI case. Although the Ohio Supreme Court has held that a defendant charged with a violation of R.C. 4511.19(A) must raise challenges to chemical test results in a motion to suppress, the court also held:

{¶ 56} "This does not mean, however, that the defendant may not challenge the chemical test results at trial under the Rules of Evidence. Evidentiary objections challenging the competency, admissibility, relevancy, authenticity, and credibility of the chemical test results may still be raised." *French*, supra, 72 Ohio St.3d at 452, 650 N.E.2d 887.

{¶ 57} I interpret *French* to mean that the purpose of challenging the chemical test results in a motion to suppress is not to make final rulings involving the Rules of Evidence, but rather, to decide the ultimate issue of whether the chemical test results are admissible at trial. The *French* opinion leaves those disputes that are purely about the Rules of Evidence as issues to be resolved at trial. Appellant's issue in this appeal is purely about the interpretation of the Rules of Evidence, particularly Evid.R. 901, 902, and 1003, and these matters should have been resolved at trial. As appellant chose not to take this case to trial, the issue is essentially nonreviewable.

{¶ 58} For these reasons, I would overrule appellant's assignments of error and would affirm the trial court decision.