The STATE of Ohio, Appellant,

v.

SKIMMERHORN, Appellee.

[Cite as *State v. Skimmerhorn,* 162 Ohio App.3d 762, 2005-Ohio-4300.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040716.

Decided Aug. 19, 2005.

J. Rita McNeil, City Solicitor, Ernest F. McAdams, City Prosecutor, and Kristen Cosgrove Eatmon, for appellant.

Matthew T. Ernst, for appellee.

MARK P. PAINTER, Judge.

{¶ 1} The state appeals the trial court's granting of defendant-appellee Brandon Skimmerhorn's suppression motion. We affirm.

{¶ 2} The state argues that the batch-and-bottle affidavit, necessary to admit the intoxilyzer result in a prosecution for driving with a prohibited alcohol level, was self-authenticating and admissible under the Ohio Rules of Evidence. We hold that the trial court did not err in granting the motion to suppress and that the document submitted by the state was not admissible under the Evidence Rules. Evid.R. 902(4), in allowing public records to be self-authenticating, does not permit a copy of a copy to substitute for the original.

{¶ 3} Police properly arrested Skimmerhorn with probable cause for driving under the influence. Had police followed administrative rules and the state complied with the Ohio Rules of Evidence, evidence tending strongly to show that

Skimmerhorn was driving under the influence would have been admissible in court. Because of those errors, the trial court did not admit that evidence, and the state was unable to pursue charges against Skimmerhorn.

## I.  Follow the Rules

{¶ 4} Around 1:40 a.m. one morning, Officer Dion Mack observed a car traveling at a high rate of speed and running a red light.  Officer Mack stopped the car and, upon approaching the vehicle, noted an odor of alcohol and Skimmerhorn staring at him with red, bloodshot eyes.  Upon questioning, Skimmerhorn admitted recently leaving the Red Cheetah, a nearby bar, and having some Budweisers.  The officer performed field-sobriety tests, including the walk-and-turn, the finger-to-nose, and the horizontal gaze nystagmus.  After these tests, Officer Mack arrested Skimmerhorn, and at 3 a.m. an intoxilyzer test was performed.  The results indicated a blood alcohol level of .131, well in excess of the prohibited level of .08.[1]

{¶ 5} Skimmerhorn moved to suppress the field-sobriety-test and intoxilyzer results.  At the suppression hearing, the state presented no evidence to show that the finger-to-nose test was reliable and credible, as required under Ohio law, and failed to demonstrate even substantial compliance with National Highway and Traffic Safety Administration regulations for the horizontal gaze nystagmus.[2] The results of those two tests were suppressed by the trial court, and that determination has not been appealed.  The walk-and-turn was conducted properly, and the trial court did not suppress that result.

{¶ 6} Skimmerhorn raised two grounds for suppressing the intoxilyzer test results, one of which is relevant here.  Skimmerhorn argued that the state had not calibrated the intoxilyzer using a batch solution approved by the Ohio Department of Health ("ODH").  The state attempted to demonstrate compliance by placing into evidence a photocopy of a certified copy of the appropriate ODH certificate.  Officer Steve Edwards, a "senior operator" of the intoxilyzer, testified that this copy was an accurate copy of the certified copy held at the police station.  Officer Edwards had no access to and had never seen the original, which was not held by the police.  The trial court ruled that this document did not comply with Evid.R. 1005 and was therefore not admissible.  Without this document, the state had no evidence showing that the calibration solution had been approved by ODH. The trial court accordingly granted the motion to suppress the intoxilyzer test results, since the state had failed to show substantial compliance with ODH regulations.

---

1.  R.C. 4511.19(A)(4) (as amended by Section 1, H.B. No. 87).

2.  R.C. 4511.19(D)(4)(b).

## II. Properly Proffered?

{¶ 7} We must initially determine whether the disputed document is properly before us. The trial court did not admit it as an exhibit, stating that it was clear that "[i]t had to be a certified copy." But the state failed to proffer the document at that point, or at any point during the hearing. To be considered on appeal, the disputed document needed to be part of the record—otherwise, how is an appellate court to rule on the admissibility of a document not before it?

{¶ 8} It was not until three months later that the state filed the "State's Proffer of Evidence," with the document attached. The trial court made its decision to grant the motion to suppress the following week.

{¶ 9} So was this proffer too late for us to consider? We hold that it was not.

{¶ 10} The purpose of a proffer is to make a record on appeal.[3] The timing of the proffer is therefore of minimal significance.[4] The affidavit was proffered on October 27. The proffer shows that it was served on Skimmerhorn's trial counsel, who did not object. So even if there had been a problem with the proffer, Skimmerhorn waived all but plain error.

{¶ 11} Further, Evid.R. 103(A)(2) states that a proffer is acceptable when "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Officer Edwards testified at length about the document; there was never any doubt that it was a copy of a copy. The document is therefore properly before us.

## III. And the Rule Is?

{¶ 12} Appellate review of a motion to suppress involves a mixed question of law and fact.[5] When considering a motion to suppress, the trial court becomes the trier of fact and is in the best position to resolve factual questions and to evaluate the credibility of witnesses.[6] An appellate court must accept the trial court's findings of fact if they are supported by competent, credible

---

3. See, generally, Evid.R. 103(A)(2); *Martin v. Nguyen,* 8th Dist. No. 84771, 2005-Ohio-1011, 2005 WL 563763, ¶ 16.

4. See *Martin v. Nguyen,* 8th Dist. No. 84771, 2005-Ohio-1011, 2005 WL 563763, ¶ 16; *State ex rel. Leis v. William S. Barton Co., Inc.* (1975), 45 Ohio App.2d 249, 74 O.O.2d 387, 344 N.E.2d 342.

5. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.

6. Id.

evidence.[7]  The appellate court must then determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard.[8]

{¶ 13} The results of a breath test may be admitted only if the state shows that the breath was analyzed in compliance with regulations promulgated by ODH.[9] The state need only show substantial compliance with the regulations, not literal compliance.[10]

{¶ 14} Under R.C. 3701.143, ODH produced Ohio Adm.Code Chapter 3701–53, entitled "alcohol testing."  Ohio Adm.Code 3701–53–04(A)(2) provides that "[a]n instrument shall be checked using an instrument check solution containing ethyl alcohol approved by the director of health."  Consensus among the courts is that the state must produce a document certifying that the alcohol calibration solution was approved by ODH.[11] Here, the state produced no documents other than a calibration-solution certificate, so we need not address whether any other documents might have met the state's burden of proving substantial compliance.

{¶ 15} For this calibration-solution certificate to have been admissible, it must have comported with the Rules of Evidence.  Evid.R. 1002, often referred to as the "best evidence rule," states that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules."

{¶ 16} The trial court ruled that the calibration-solution certificate the state sought to admit was "a certified copy of a certified copy."  While Officer Edwards described this document as a copy of an original, "original" is a term of art defined in Evid.R. 1001(3): "An 'original' of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it."  The trial court's ruling was supported by the officer's attempt to certify the document as a copy during the suppression hearing, and by the opportunity of the trial court to view the document.[12]

---

7.  Id.

8.  Id.

9.  See *Cincinnati v. Sand* (1975), 43 Ohio St.2d 79, 72 O.O.2d 44, 330 N.E.2d 908, paragraph two of the syllabus.

10.  *State v. Plummer* (1986), 22 Ohio St.3d 292, 294, 22 OBR 461, 490 N.E.2d 902.

11.  See *State v. Lake*, 151 Ohio App.3d 378, 2003-Ohio-332, 784 N.E.2d 162, at ¶ 14; *Columbus v. Robbins* (1989), 61 Ohio App.3d 324, 328, 572 N.E.2d 777.  But, see, *State v. Easter* (1991), 75 Ohio App.3d 22, 27, 598 N.E.2d 845.

12.  Cf. Weissenberger, Ohio Evidence (2003), Section 1005.1 (stating that, under Evid.R. 1005, duplicate not admissible as original).  But, see, *State v. Pariscoff* (Mar. 13, 1990), 4th Dist. No. 1513, 1990 WL 34122.

{¶ 17} Evid.R. 1005, entitled "Public Records," sets forth a mandatory standard that a copy of a public document, when the content of that document is at issue, must meet to be admitted in evidence.[13] Evid.R. 1005 provides that "[t]he contents of an official record * * * may be proved by copy, certified as correct in accordance with Rule 902, Civ.R. 44, Crim.R. 27, or testified to be correct by a witness who has compared it with the original." These possible avenues of admissibility for the calibration-solution certificate will be examined in turn.

{¶ 18} Evid.R. 902 describes the process by which public documents can "self-authenticate." That is, the documents are, on their face, what they claim to be and do not require any further extrinsic evidence of authenticity. Evid.R. 902(4) specifically addresses certified copies of public records, which may be admissible when accompanied by the appropriate party's signature and seal.

{¶ 19} The relevant document in this case was the calibration-solution certificate maintained at ODH. It is the content of that document, allegedly showing that the solution was approved by ODH, that is at issue. The trial court had to determine whether the copy, offered as evidence, was an accurate copy of the original held at ODH.[14] That was a fact to which ODH could have attested, but not Officer Edwards, who had never seen the original.[15] For this reason, ODH was the only entity able to certify a copy of the original. Officer Edwards's personal statement that the copy he offered to the court was equivalent to the ODH certified copy he had on file was of no significance. This document was not admissible under Evid.R. 902.[16]

{¶ 20} Civ.R. 44 and its counterpart, Crim.R. 27, provide a very similar mechanism to Evid.R. 902 for admitting copies of official documents. They allow a copy to be admissible when it bears the seal of the public officer who has custody of the record. Again, for purposes of this case, the pertinent certification must have been from ODH, not Officer Edwards. Evidently, the document that was probably in Officer Edwards's file drawer would have been fine. But the copy of this document was inadmissible under Civ.R. 44 or Crim.R. 27.

{¶ 21} The photocopied seal and ODH signature on the photocopy offered to the court were not relevant to this evidentiary determination. The requirement of a seal is not a trivial one and should not be compromised by permitting a

---

13. See, generally, Shea, Ohio Evidence Manual (2005), Section 1005.2.

14. See, also, 4 Wigmore, Evidence (Chadbourn Rev.1972), Section 1275.

15. See, also, id. at Section 1278 (at common law, the general rule that an individual certifying a copy must have knowledge of the original was "constantly invoked").

16. See, generally, Painter, Ohio Driving Under the Influence Law (2005), Section 9:10.

photocopy to suffice. A seal is, in effect, a multidimensional signature. Thus, the likelihood of a forgery under seal is minimal and is less than when dealing with merely hand-signed public documents.[17] It is because of this added reliability that documents with an original seal, such as a certified copy, can be allowed into evidence without any other extrinsic evidence of admissibility. Allowing a photocopy of a seal to represent a seal would conflict with the policy interest behind allowing self-authentication.[18] A photocopy of a seal does not provide the greater reliability that justifies special treatment under the Evidence Rules.[19]

{¶ 22} Evid.R. 1005 also allows evidence to be admissible when testified to be correct by a witness who has compared the copy with the original.[20] As we have already discussed, the trial court correctly determined that Officer Edwards did not have custody of the original. He was necessarily, then, unable to compare the copy offered to the court with the original. The certification-solution certificate was therefore not admissible under this third avenue provided by Evid.R. 1005.

## IV. It's Not a Trick Question

{¶ 23} Although the clear terms of the Rules of Evidence specify Evid.R. 1005 as the applicable rule for admitting copies of public records, some appellate districts have applied rules of evidence other than Evid.R. 1005 to avoid its requirements.[21] Such a result is inconsistent with basic principles of statutory interpretation and is unsound as a matter of law. In particular, courts have applied Evid.R. 901(A) and 1003.

{¶ 24} Evid.R. 901(A) is the general provision addressing the requirement of authentication as a condition precedent to admissibility. Evid.R. 901(A) must operate within the constraints of the other evidence rules, including Evid.R. 1002's requirement of originality.[22] While Evid.R. 1002 allows for exceptions to the requirement of originality where otherwise provided in the rules, Evid.R. 901

---

17. See Evid.R. 902 Staff Notes. See, generally, Weissenberger, Ohio Evidence (2003), Section 902.13.

18. *State v. Lake*, 151 Ohio App.3d 378, 2003-Ohio-332, 784 N.E.2d 162, at ¶ 50 (Waite, J., dissenting on unrelated grounds); Cf. *United States v. Dockins* (C.A.5, 1993), 986 F.2d 888, 894.

19. Cf. *State v. Clites* (1991), 73 Ohio App.3d 36, 39–40, 596 N.E.2d 550.

20. See, also, 4 Wigmore, Evidence (Chadbourn Rev.1972), Section 1278.

21. *State v. Easter* (1991), 75 Ohio App.3d 22, 27, 598 N.E.2d 845; *State v. Heiney*, 11th Dist. No. 2000–P–0081, 2001-Ohio-4287, 2001 WL 1149534.

22. Weissenberger, Ohio Evidence (2003), Section 901.95.

contains no explicit or implicit exception for copies of public records. Finding an exception where none is stated would open the door to the complete disregard of Evid.R. 1002 and would render the relationship between Articles IX (Evid.R. 901–903) and X (Evid.R. 1001–1008) incoherent.

{¶ 25} Evid.R. 1003, like Evid.R. 1005, is an exception to the requirement of originality. Evid.R. 1003, "admissibility of duplicates," allows the admission of a duplicate unless a genuine question is raised about the authenticity of the original, or under the circumstances it would be unfair to admit the duplicate in lieu of the original. This is a lesser standard than that of Evid.R. 1005, with a presumption of authenticity. Allowing copies of public documents to be admitted under Evid.R. 1003 would render Evid.R. 1005 largely irrelevant. The only likely scenario under which a party could raise a genuine question of authenticity, as provided under Evid.R. 1003, is if it had access to the original for comparison, in which case the whole issue of admitting a copy would be moot. Where the content of a public record is at issue, Evid.R. 1003 plays no role in the admissibility of a copy of that public record.[23]

{¶ 26} In addition to being the law, the exclusive use of Evid.R. 1005 is sound public policy. Public documents, in comparison with private documents, carry particular weight and significance in legal proceedings. The credibility attached to public documents makes their admission into evidence often dispositive of the facts at issue. That is why the Rules of Evidence demand a high standard of authentication for public documents.

{¶ 27} Evid.R. 1005 exists to relieve public officials of the risk and burden of bringing important and sometimes irreplaceable public documents to court proceedings. Here, the state did not have to go through the complicated process of securing the ODH original; it could merely have produced the certified copy already in the custody of Officer Edwards. This was hardly an unreasonable burden.

{¶ 28} As a final consideration, it is worthwhile to consider the guidance in the Ohio Rules of Evidence as to how these rules should be construed: "These rules shall be construed to state the common law of Ohio unless the rule clearly indicates that a change is intended."[24] It was a well-settled common-law principle that a copy of a copy was not admissible in court if the original or a certified copy was still in existence.[25] This rule has been applied by the Ohio

---

23. *State v. Lake*, 151 Ohio App.3d 378, 2003-Ohio-332, 784 N.E.2d 162, at ¶ 21; *State v. Bauer* (Sept. 13, 1996), 6th Dist. No. OT–95–050, at 13–15, 1996 WL 520057; Weissenberger, Ohio Evidence (2003), Section 1003.1.

24. *State v. Boston* (1989), 46 Ohio St.3d 108, 116, 545 N.E.2d 1220; see Evid.R. 102.

25. See 4 Wigmore, Evidence (Chadbourn Rev.1972), Sections 1274 and 1275.

Supreme Court for at least 160 years and has a long history in federal jurisprudence.[26] There is no "clear indication" in the Ohio rules that a change in this long-held common-law principle is intended.

## V. Understanding the Facts

{¶ 29} The state points to two First Appellate District cases, *State v. McEwen* and *State v. Veeneman*, and claims that they control the outcome of this case.[27] This reflects a misunderstanding of the issues presented here and of the facts of these prior cases.

{¶ 30} In *McEwen*, the state offered as evidence the *actual certified copy* provided by ODH. The court was not forced to improperly abrogate its determination of authenticity to a police officer (in an ironic twist, the same Officer Edwards who testified in this case).

{¶ 31} The present case presents an entirely distinct factual circumstance. The trial court was not presented with the ODH certified copy, but was instead forced to rely upon the officer's determination of the authenticity of the ODH certified copy. That determination was for the trial court to make, as required by the Rules of Evidence. The ruling in this case, arising as it did out of entirely different facts, was not determined by and should not be read as questioning the outcome of *McEwen*. To the extent that *McEwen*, in dicta, suggested a conflicting interpretation of the Rules of Evidence, we disavow that language and hold that Evid.R. 1005 must be satisfied before copies of public records may be admitted into evidence.

{¶ 32} *Veeneman* simply reiterated the requirements of Evid.R. 902. As in *McEwen*, the document before the court bore the seal of the state of Ohio and the appropriate ODH signatures. The court found the document admissible under Evid.R. 902. *Veeneman* has no factual relation to the present case.

## VI. With Regret . . .

{¶ 33} The trial court was presented with a calibration-solution certificate provided by the state, a document upon which the outcome of Skimmerhorn's criminal proceeding hinged. Although the state possessed two calibration-solution documents meeting the standards established by the Rules of Evidence, an original with ODH and one certified copy in the custody of Officer Edwards,

26. *Winn v. Patterson* (1835), 34 U.S. 663, 677, 9 Pet. 663, 9 L.Ed. 266; *State v. Wells* (1842), 11 Ohio 261, 263.

27. *State v. McEwen*, 1st Dist. No. C–030285, 2004-Ohio-1488, 2004 WL 595643; *State v. Veeneman* (Dec. 12, 1984), 1st Dist. No. C–840187, 1984 WL 7114.

the state chose to provide a second-rate photocopy meeting none of Evid.R. 1005's evidentiary standards. The trial court properly excluded this document. Without this document, the state was unable to show any level of compliance with ODH regulations. The intoxilyzer test results, therefore, were inadmissible as a matter of law. We therefore overrule the state's sole assignment of error and affirm the trial court's judgment.

Judgment affirmed.

HILDEBRANDT, P.J., and DOAN, J., concur.