[Cite as *State v. Sargent*, 2020-Ohio-5464.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellant,

v.

CHAD SARGENT,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 20 MA 0034

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 19-CR-956

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul J. Gains*, Mahoning County Prosecutor*,* and *Atty. Ralph M. Rivera*, Assistant Prosecuting Attorney, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellant and

*Atty. Gregg Rossi, and Atty. James Melfi,* Rossi & Rossi Co., 26 Market Street, 8th Floor, Huntington Bank Building, P.O. Box 6045, Youngstown, Ohio 44501, for Defendant-Appellee.

Dated: November 18, 2020

---

**D'Apolito, J.**

{¶1} Appellant, the State of Ohio, appeals from the March 4, 2020 judgment of the Mahoning County Court of Common Pleas granting Appellee's, Chad Sargent, motion to suppress following a hearing. On appeal, the State contends the trial court applied the wrong standard. Specifically, the State argues the trial court erred in determining that it had to demonstrate that Trooper John Lamm, with the Ohio State Highway Patrol, had probable cause to effectuate a traffic stop of Sargent's vehicle for an R.C. 4513.05(A) license plate violation and in determining that it failed to demonstrate that Trooper Lamm had a reasonable, articulable suspicion to effectuate the stop. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2} On November 7, 2019, Sargent was indicted by the Mahoning County Grand Jury on one count of improperly handling firearms in a motor vehicle, a felony of the fourth degree, in violation of R.C. 2923.16(B) and (I). Sargent retained counsel, pleaded not guilty at his arraignment, and waived his right to a speedy trial.

{¶3} On December 9, 2019, Sargent filed a motion to suppress. A hearing was held on February 19, 2020.

{¶4} Trooper Lamm testified for the State that he works midnights and was on duty on May 6, 2019 in the Austintown area. (2/19/2020 Suppression Hearing T.p. 4, 9). The dash cam video was played for the court. (*Id.* at 5; State's Exhibit 2). Trooper Lamm was traveling westbound on Mahoning Avenue. (*Id.* at 6). He observed Sargent's vehicle making a right-hand turn onto Viall Road. (*Id.*) Trooper Lamm looked down the street and twice determined that Sargent's license plate light was not illuminated in a manner which would make it readable from 50 feet. (*Id.*) Trooper Lamm stopped Sargent's vehicle due to the alleged traffic violation. (*Id.* at 7).

{¶5} As he approached the car, Trooper Lamm noticed that Sargent was breathing heavily, "appeared overly nervous," his eyes were "glassed over," and the inside of his vehicle was "very cluttered," but he did not smell any alcohol. (*Id.* at 8-9).

Case No. 20 MA 0034

Trooper Lamm brought Sargent back to his cruiser and placed him in the front seat. (*Id.* at 9). Trooper Lamm performed an HGN test which did not reveal any clue that Sargent was impaired. (*Id.* at 10).

{¶6} Upon questioning, Sargent revealed that there was a loaded gun in the center console of his vehicle. (*Id.* at 11). The LEADS printout showed that Sargent did not have a concealed carry license. (*Id.*) Trooper Lamm placed Sargent in the back seat of his cruiser and he searched Sargent's vehicle. (*Id.* at 13). Trooper Lamm then seized the firearm, placed Sargent under arrest, and took him to the station. (*Id.* at 13-14).

{¶7} On cross-examination, Trooper Lamm testified that on the night at issue, he was heading westbound on Mahoning Avenue and Sargent was traveling eastbound. (*Id.* at 16). He observed Sargent's vehicle making a right-hand turn onto Viall Road. (*Id.* at 17). At that point, Trooper Lamm did not see the rear of Sargent's car. (*Id.*) Trooper Lamm then also turned onto Viall Road and followed Sargent. (*Id.*) Trooper Lamm agreed, and the video reveals, "that the distance between when [he] activated [his] lights and where Mr. Sargent's vehicle was was [sic] certainly greater than 50 feet." (*Id.* at 19; State's Exhibit 2). Trooper Lamm indicated that the sole reason why he effectuated the traffic stop of Sargent's vehicle was because the rear license plate was not illuminated. (*Id.* at 19-20).

{¶8} When Trooper Lamm exited his cruiser to approach Sargent's vehicle, he did not do a further inspection of the rear license plate light. (*Id.* at 22-23). Sargent was "cooperative and compliant" during the stop. (*Id.* at 24). A picture of Sargent's license plate, HCC 6514, was taken after he was released showing two illuminated lights, "one on the left and one on the right." (*Id.* at 27-28; Defendant's Exhibit 1).

{¶9} Sargent testified that his leased vehicle, a 2017 Chevrolet Silverado LT, is inspected every three months. (*Id.* at 32). Prior to the traffic stop, Greenwood Chevrolet had inspected his truck. (*Id.*) Thus, Sargent was "surprised" when Trooper Lamm stopped him due to his rear license plate not being illuminated. (*Id.* at 34). After Sargent was released, he retrieved his vehicle and inspected the license plate lights. (*Id.* at 35). At that time, Sargent took a photo of his license plate showing both lights on and in working order. (*Id.*; Defendant's Exhibit 1).

{¶10} On cross-examination, Sargent testified that he told Trooper Lamm that he

had a loaded gun in his vehicle and gave him consent to search his truck. (*Id.* at 39). Sargent agreed that the photo he had taken of his license plate shows no date and time and, therefore, could have been taken on any night. (*Id.* at 41-42).

{¶11} On redirect examination, Sargent testified he was "positive" that he took the photograph of his license plate on the night at issue immediately after he was released and picked up his vehicle. (*Id.* at 44).

{¶12} On March 4, 2020, the trial court granted Sargent's motion to suppress. Specifically, the court determined there was no evidence of an R.C. 4513.05(A) traffic violation because Trooper Lamm's cruiser was more than 50 feet away from Sargent's vehicle when he initiated the traffic stop, and as a result, there was no probable cause for Trooper Lamm to conduct the stop. The court further determined there was no reasonable, articulable suspicion that any criminal activity had occurred, and therefore, the evidence discovered following the illegal stop and search must be suppressed.

{¶13} The State filed a timely appeal and raises one assignment of error.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT THE STATE FAILED TO PRESENT SUFFICIENT CREDIBLE EVIDENCE TO DEMONSTRATE THAT TROOPER JOHN LAMM HAD A REASONABLE, ARTICULABLE SUSPICION TO EFFECTUATE A TRAFFIC STOP OF DEFENDANT'S VEHICLE.**

{¶14} In its sole assignment of error, the State argues the trial court erred in granting Sargent's motion to suppress. The State argues the trial court applied the wrong standard. In particular, the State alleges the trial court erred in determining that it had to demonstrate that Trooper Lamm had probable cause to effectuate the traffic stop of Sargent's vehicle for the R.C. 4513.05(A) violation. The State further contends the trial court erred in determining that it failed to demonstrate that Trooper Lamm had a reasonable, articulable suspicion to effectuate the stop. Applying the reasonable suspicion standard, we find no merit to the State's argument.

A motion to suppress presents mixed issues of law and fact. *State v. Lake*, 151 Ohio App.3d 378, 2003-Ohio-332, 784 N.E.2d 162, ¶ 12 (7th Dist.), citing *State v. Jedd*, 146 Ohio App.3d 167, 171, 765 N.E.2d 880 (4th Dist.2001.) If a trial court's findings of fact are supported by competent credible evidence, an appellate court must accept them. *Id.* The court must then determine whether the trial court's decision met the applicable legal standard. *Id.*

There are two types of valid traffic stops: (1) where police have probable cause that a traffic violation has occurred or was occurring and (2) where police have reasonable articulable suspicion that criminal activity has occurred. *State v. Ward*, 7th Dist. Columbiana No. 10 CO 28, 2011-Ohio-3183, ¶ 35, citing *Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*State v. McMillon*, 7th Dist. Columbiana No. 18 CO 0016, 2019-Ohio-2716, ¶ 10-11.

**{¶15}** The statute at issue, "Tail lights and illumination of rear license plate," provides in part:

Either a tail light or a separate light shall be so constructed and placed as to illuminate with a white light the rear registration plate, when such registration plate is required, and render it legible from a distance of fifty feet to the rear. Any tail light, together with any separate light for illuminating the rear registration plate, shall be so wired as to be lighted whenever the headlights or auxiliary driving lights are lighted, except where separate lighting systems are provided for trailers for the purpose of illuminating such registration plate.

R.C. 4513.05(A).

**{¶16}** This case involves a credibility issue. "'[I]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best

position to resolve questions of fact and evaluate the credibility of witnesses.'" *State v. Martin*, 7th Dist. Columbiana No. 18 CO 0033, 2020-Ohio-3579, ¶ 45, quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). Although not specifically stated, it appears the trial court did not believe Trooper Lamm's testimony on direct examination. Again, Trooper Lamm indicated that he twice determined that Sargent's license plate light was not illuminated in a manner which would make it readable from 50 feet and he stopped Sargent's vehicle due to the alleged traffic violation. (2/19/2020 Suppression Hearing T.p. 6-7).

{¶17} We stress that Trooper Lamm and Sargent were initially traveling in opposite directions. Trooper Lamm was traveling westbound on Mahoning Avenue while Sargent was traveling eastbound. (*Id.* at 6, 16). Thus, at that point, it would have been impossible for Trooper Lamm to see the back of Sargent's vehicle. The dash cam video demonstrates that Trooper Lamm initiated his take-down lights almost immediately after turning onto Viall Road to follow Sargent's vehicle. (State's Exhibit 2). On cross-examination, Trooper Lamm agreed, and the video reveals, "that the distance between when [he] activated [his] lights and where Mr. Sargent's vehicle was was [sic] certainly greater than 50 feet." (*Id.* at 19; State's Exhibit 2). Trooper Lamm admitted that he had no basis for the stop other than the alleged R.C. 4513.05(A) violation. (*Id.* at 19-20). However, based on the facts presented, there was no reason for Trooper Lamm to stop Sargent's vehicle for an R.C. 4513.05(A) violation. Trooper Lamm was at the outset travelling in the opposite direction on Mahoning Avenue, and thereafter, certainly more than 50 feet away when he turned to follow Sargent and initiated his take-down lights on Viall Road.

{¶18} The trial court also heard from Sargent. He testified that his leased vehicle was inspected prior to the traffic stop and, thus, was "surprised" when Trooper Lamm stopped him due to his rear license plate not being illuminated. (*Id.* at 32-34). After Sargent was released, he retrieved his vehicle and inspected the license plate lights. (*Id.* at 35). At that time, Sargent took a photo of his license plate showing both lights on and in working order. (*Id.*; Defendant's Exhibit 1). Sargent testified on redirect examination that he was "positive" that he took the photograph of his license plate on the night at issue immediately after he was released and picked up his vehicle. (*Id.* at 44).

{¶19} Upon consideration, there was no credible evidence or testimony establishing a traffic violation. The record fails to show that Sargent's rear license plate was not illuminated and legible from a distance of 50 feet as required by R.C. 4513.05(A). There was no reasonable, articulable suspicion that any criminal activity had occurred to justify the stop. Thus, the trial court did not err in granting Sargent's motion to suppress.

## CONCLUSION

{¶20} For the foregoing reasons, the State's sole assignment of error is not well-taken. The judgment of the Mahoning County Court of Common Pleas granting Sargent's motion to suppress following a hearing is affirmed.

Donofrio, J., concurs.

Waite, P.J., concurs.

Case No. 20 MA 0034

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**