The STATE of Ohio, Appellee,

v.

HILER, Appellant.

[Cite as State v. Hiler (1994), 96 Ohio App.3d 271.]

Court of Appeals of Ohio,
Montgomery County.

No. 14433.

Decided July 29, 1994.

■■■■■■
■■■■■■
■■■■■■
■■■■■■■■■■

*Joe Cloud,* City Prosecutor, for appellee.

*W. Randall Rock,* for appellant.

BROGAN, Judge.

Richard L. Hiler appeals from his conviction of driving while under the influence in the Municipal Court of Vandalia, Traffic Division.

Hiler advances three assignments of error, asserting that (1) the trial court's decision overruling his motion to suppress and holding that weaving in one's own lane constituted sufficient specific and articulable facts to warrant an investigatory stop is against the weight of the evidence, contrary to law, and an abuse of discretion; (2) the trial court's decision overruling his motion to suppress evidence on the basis that *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237, is misplaced, is contrary to law, and an abuse of discretion, and against the weight of the evidence, and (3) the trial court's decision to allow into evidence State's Exhibit 2 and the subsequent conviction of appellant based on that evidence is against the weight of the evidence, contrary to law, and an abuse of discretion.

On December 2, 1992, Trooper D.B. Fussner, an eight-year veteran of the Ohio State Highway Patrol, was on patrol driving southbound on North Dixie Drive in Harrison Township, Montgomery County, Ohio. Trooper Fussner observed a vehicle, also traveling southbound, make a wide right turn onto westbound Needmore road. It is undisputed that this area is noted for frequent arrests of impaired drivers. Trooper Fussner followed the car onto Needmore Road. He observed the vehicle "weaving quite noticeably left to right within his own lane. He'd come over to the concrete divider and almost hit it and come and jerk back across and go back to the right side where the white dotted lane lines were. I ran a check for stolen on the registration of the vehicle, which I was following was I believe a blue Chevette and the registration came back on a Cadillac. So at that time I activated my overhead pursuit lights."

Officer Fussner noted the erratic driving took place over a distance of about one mile. After he activated his overhead lights, it was another half mile before the vehicle stopped.

After he stopped the vehicle, he asked the driver for his license, to which the driver replied he had none. Trooper Fussner detected a strong odor of alcohol and noticed the driver's eyes were bloodshot and glassy. He asked the driver to exit the vehicle and administered a series of field sobriety tests.

Hiler was charged with a seatbelt violation, operating a motor vehicle while under the influence, and operating the motor vehicle without a valid operator's license.

On December 21, 1992, Hiler filed a motion to suppress, asserting that the Trooper Fussner did not have a sufficient basis to issue a traffic citation or to conclude that Hiler was operating a motor vehicle while under the influence of alcohol. A hearing on the motion was held on May 27, 1993, and the trial court overruled the motion. A trial was held on December 30, 1993.

On December 30, 1993, Hiler was sentenced to one year in jail, with all but thirty days suspended. His license was also suspended for one year without driving privileges.

Hiler filed a notice of appeal on January 31, 1994.

In his first assignment of error, Hiler asserts that the trial court's decision overruling his motion to suppress was against the weight of the evidence, contrary to law, and an abuse of discretion.

Hiler relies primarily on *State v. Gullett* (1992), 78 Ohio App.3d 138, 604 N.E.2d 176, and *Mason v. Loveless* (1993), 87 Ohio App.3d 264, 622 N.E.2d 6, for the proposition that the mere fact that a car is weaving within its lane of travel does not constitute a sufficient articulable fact for an officer to execute a stop. We disagree and find both these cases distinguishable.

In *Gullett,* the appellee was stopped after an officer observed him cross the edge line once by drifting to the right, and a second time while executing a sharp turn. The court granted the defendant's motion to suppress and the state appealed. The court stated that "it does not follow that every crossing of the edge line, regardless of circumstances, constitutionally justifies a stop." *Id.,* 78 Ohio App.3d at 145, 604 N.E.2d at 180.

"We are uninformed as to how far the edge line extended into the intersection and by how much and how far the edge line was crossed. The touchstone of the Fourth Amendment is reasonableness. Where a vehicle is driven on a roadway with no other traffic present, there was no speeding, erratic driving or other conduct, except for the edge line incident, to indicate that appellee was impaired, the balance is in favor of the right to privacy and against the need for a stop. Based on the totality of the circumstances, we are not persuaded that sufficient articulable facts, and inferences therefrom, existed to constitutionally justify the stop." *Id.*

In his concurring opinion, Judge Abele noted that while in some cases weaving *within* a single lane of travel may justify an investigative stop, the facts in *Gullett* were unclear as to whether the vehicle's contacts with the edge line were momentary or for a long duration. Moreover, the evidence indicated that the vehicle only crossed the line once over a distance of one and one half miles and that no other erratic movements were noted. *Id.* at 146, 604 N.E.2d at 181.

In *Mason, supra,* an officer observed a vehicle drift one-half car length to the right and then jerk away from the curb. The state appealed the court's upholding of the appellee's motion to suppress. In affirming the trial court, the court of appeals held that "we do not think that the officer's observation of appellee making one small weave within his lane of travel was sufficient to give the officer a reasonable and articulable suspicion that appellee was driving under the influence of alcohol. Accord *State v. Gullett* (19[9]2), 78 Ohio App.3d 138, 604 N.E.2d 176." *Id.,* 87 Ohio App.3d at 266, 622 N.E.2d at 7.

Moreover, this court has previously held that where an officer observes a vehicle weaving in its own lane of travel for several blocks, in the early morning hours, in an area where a high number of DUI arrests had recently been made, the erratic driving alone was a sufficient basis for an articulable and reasonable suspicion justifying an investigatory stop to determine the reason for the erratic driving. *State v. Hilleary* (May 24, 1989), Miami App. No. 88–CA–5, unreported, 1989 WL 55637.

■  The evidence in this case indicates that Hiler was driving erratically for almost a mile, in the early morning hours, in an area known for its high number of DUI arrests. Further, a license plate check revealed a discrepancy on the type of vehicle registered. We find that these facts constituted sufficient articulable facts for Trooper Fussner to initiate an investigative stop. Accordingly, Hiler's first assignment of error is overruled.

In his second assignment of error, Hiler contends the trial court erred in overruling his motion to suppress based on *Chatton, supra,* 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237.

In *Chatton,* the appellee's vehicle was stopped when an officer noticed the vehicle had neither a front nor back license plate displayed. As the officer approached the vehicle, he noticed a temporary tag lying on the rear deck of the vehicle directly beneath the rear window. The officer requested the appellee to produce his driver's license, which was erroneously listed as suspended. The appellee was placed under arrest, and a search of his car yielded a revolver hidden under the driver's seat. The appellee was indicted for carrying a concealed weapon. The appellee filed a motion to suppress, and the trial court's

overruling of that motion was reversed by the court of appeals. In affirming the court of appeals, the Supreme Court held that once the officer ascertained that the vehicle was properly tagged, "because the police officer no longer maintained a reasonable suspicion that appellee's vehicle was not properly licensed or registered, to further detain appellee and demand that he produce his driver's license is akin to the random detention struck down by the Supreme Court in *Delaware v. Prouse* [ (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660]." *Id.,* 11 Ohio St.3d at 63, 11 OBR at 253, 463 N.E.2d at 1240.

■ Hiler asserts that once Trooper Fussner was satisfied that the registration matter was cleared up, the reason for any continued detention and investigation into his driver's license and impaired driving was at an end. We disagree.

Trooper Fussner first noticed Hiler's vehicle making a wide right turn, but actually based his decision to stop his vehicle after seeing it weave several times. As he approached the stopped vehicle, he detected a strong smell of alcohol. Thus, Trooper Fussner did not stop Hiler only to inquire into the license plate discrepancy, but, as discussed in Hiler's first assignment of error, had sufficient articulable facts to detain Hiler temporarily to determine whether he was an impaired driver. Accordingly, Hiler's second assignment of error is overruled.

In his third assignment of error, Hiler asserts the trial court erred in allowing into evidence State's Exhibit 2.

Specifically, Hiler asserts that this exhibit does not comply with the mandates of Evid.R. 901(B)(7) or 901(B)(10), or with the certification requirements of Crim.R. 27 or Civ.R. 44.

Evid.R. 902(1) provides that extrinsic evidence of authenticity as a condition precedent to admissibility is not required for:

"(1) Domestic public documents under seal. A document bearing a seal purporting to be that of * * * any State * * * or of a * * * department, officer, or agency thereof, and a signature purporting to be an attestation or execution."

In admitting Exhibit 2, the following testimony was heard:

"MR. ENSLEY. * * * We'll offer State's Exhibit 2, which is some papers from the Bureau of Motor Vehicles.

"MR. ROCK. I would object, Your Honor, as to, does this say that his driver's license is expired only?

"MR. ENSLEY. Do what?

"MR. ROCK. What does this say here, (inaudible) of '92?

"MR. ENSLEY. Let's see.

"JUDGE. Is the document you gentleman are examining a certified copy from the Bureau of Motor Vehicles?

"MR. ENSLEY. Yeah, here, here's a Court suspension from 5/07/92 to 5/07/93, Middletown Municipal Court.

"JUDGE. Is the document a certified document certified by the Bureau of Motor Vehicles in this case?

"MR. ENSLEY. Yes, there's a certificate, a printed certificate.

"MR. ROCK. I would still object. I don't know that that's a certified copy of anything.

"JUDGE. State's Exhibit 2 may be admitted."

In support of his argument, Hiler relies on *Aurora v. Lesky* (1992), 79 Ohio App.3d 568, 607 N.E.2d 908. In *Aurora, supra,* the appellant objected to the state's introduction into evidence of exhibits which it professed to be copies of the originals. Attached to each document was a statement signed by the custodian asserting that the copy was a true and accurate copy of the original. However, the statement did not identify the individual copied document it purported to authenticate. The Portage County Court of Appeals held that "a document is not certified as self-authenticating under Evid.R. 902 when the certification fails to identify or describe the specific document in question * * *." *Id.* at 571, 607 N.E.2d at 910.

We decline to follow the holding in that case.

In *State v. Madlinger* (Jan. 26, 1990), Montgomery App. No. 11484, unreported, 1990 WL 4950, this court held that a packet of documents from the Bureau of Motor Vehicles introduced into evidence with a front-page certification by the registrar was a properly certified public record.

In a more recent case, the Lake County Court of Appeals addressed this same issue and stated that:

"While attaching several documents to a certification has been criticized, in the absence of any assertion of tampering, or evidence contradicting the purported records' correctness, admitting the copies does not constitute error. *State v. Clites* (1991), 73 Ohio App.3d 36, 38 [596 N.E.2d 550, 551]." *State v. Kennedy*

(June 4, 1993), Lake App. No. 92–L–101, unreported, 1993 WL 418491.  See, also, *State v. Morrison* (1982), 2 Ohio App.3d 364, 2 OBR 421, 442 N.E.2d 114.

The document labeled State's Exhibit 2 is an attestation from the Registrar of the Bureau of Motor Vehicles stating that "I am custodian of all the files and records of the Bureau of Motor Vehicles; that a search of the files has been made; and, that the attached documents are true and accurate copies of the records in my custody."  There is a seal at the bottom left-hand corner of the document and a signature of execution.  No documents are attached to Exhibit 2, although there are staple holes in the left hand corner of the document.  State's Exhibit 2 does not specifically reference any document.

We will assume, *arguendo,* that the document stapled to Exhibit 2 was Hiler's driving record.  Hiler's sole contention is that the exhibit should not have been admitted because it was not properly authenticated.

■  We find that although attaching copies to an attestation from the Registrar of the Bureau of Motor Vehicles is not the best method of certification, in the absence of an assertion of tampering or evidence contradicting the records' correctness, it was not error for the trial court to approve this method of certification.  See *Kennedy, supra; Clites, supra.*  Accordingly, Hiler's third assignment of error is overruled.

The judgment of the Traffic Division, Municipal Court of Vandalia, Ohio, is affirmed.

*Judgment affirmed.*

FREDERICK N. YOUNG and WILSON, JJ., concur.

RICHARD K. WILSON, J., retired, of the Second Appellate District, sitting by assignment.