OPINION
{¶ 1} This case presents two issues. The first is whether the trial court erred when it found that the warrantless stop of Appellant's vehicle was justified by probable cause of a marked lanes violation. The second issue is whether the trial court erred when it denied Defendant's motion to suppress evidence of field sobriety tests that formed a basis for Defendant's subsequent arrest on a DUI charge because the trial court failed to follow the strict compliance rule of State v. Homan,89 Ohio St.3d 421, 2000-Ohio-212.
 {¶ 2} We find no error in the trial court's decision that the stop of Defendant's vehicle was justified. However, we find that the trial court erred when it applied and followed the substantial compliance test that Homan rejected to find that evidence of the field sobriety tests was admissible. Accordingly, we shall reverse Defendant's conviction and remand for further proceedings on the issue.
 {¶ 3} Defendant was operating his vehicle westbound on Interstate Route 70 on December 11, 2001, at approximately 4:14 a.m., when he was stopped by Sgt. Joe Luebbers of the Ohio Highway Patrol. Sgt. Leubbers later testified that he observed Defendant commit a marked lanes violation and stopped Defendant in order to cite him on that charge.
 {¶ 4} When he engaged Defendant in conversation, Sgt. Luebbers suspected that Defendant might be under the influence of alcohol. He noted that Defendant's eyes were bloodshot and that his breath had a strong odor of alcohol. (T. 11). Sgt. Luebbers asked Defendant if he'd had anything to drink. Defendant said he'd had "a couple." (T. 52).
 {¶ 5} Sgt. Luebbers required Defendant to submit to three field sobriety tests: the horizontal gaze nystagmus (HGN) test, a one-leg stand test, and a walk-and-turn test. Based on the result of those tests, Sgt. Luebbers concluded that Defendant was under the influence of alcohol and he arrested Defendant on that charge.
 {¶ 6} Defendant filed a Crim.R. 12(C) motion to suppress evidence. The motion had two branches. The first challenged the stop of Defendant's vehicle. The second challenged the probable cause for his arrest on the DUI charge, and specifically the admissibility of the results of field sobriety tests that Sgt. Luebbers performed. The trial court conducted an evidentiary hearing on Defendant's motion and thereafter denied it.
 {¶ 7} Defendant changed his plea from not guilty to no contest. The trial court accepted the plea, entered a judgment of conviction, and imposed a sentence pursuant to law. Defendant filed a timely notice of appeal.
 FIRST ASSIGNMENT OF ERROR {¶ 8} "The trial court erred by finding that there was probable cause to pull appellant over despite the only evidence being non-specific testimony about the vehicle crossing the lane markings."
 {¶ 9} A law enforcement officer's stop of a motor vehicle is a seizure for purposes of the Fourth Amendment, and when performed without benefit of a warrant is illegal absent some justification which in the law renders it reasonable and therefore legal. When a Defendant's motion to suppress challenges a warrantless stop, the state has the burden to show the necessary justification. If the state fails to meet that burden, the court must suppress all evidence gathered from and as a result of the stop.
 {¶ 10} The State sought to justify the warrantless stop of Defendant's vehicle on the basis of the rule announced in Whren v.United States (1996), 517 U.S. 806, 116. S.Ct. 1769, and Dayton v. Erickson
(1996), 76 Ohio St.3d 3. That rule holds:
 {¶ 11} "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." Erickson, Syllabus by the Court.
 {¶ 12} Pretext wasn't an issue here. Rather, the question was whether facts and circumstances Sgt. Luebbers observed concerning Defendant's travel were sufficient to present probable cause of a violation of R.C. 4511.33(A). That section states, in pertinent part: "Whenever any roadway has been divided into two or more clearly marked lanes for traffic, . . . [a] vehicle . . . shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such a lane or line until the driver has first ascertained that such movement can be made with safety."
 {¶ 13} Sgt. Luebbers testified that he saw Defendant's vehicle weave to the sides of its lane of travel, its tires crossing the lines marking the lane's left and right sides by about one tire width, four times in all. These events occurred within a distance of approximately one half mile, according to Sgt. Luebbers, and as a result caused him to stop Defendant's vehicle to cite him for a violation of R.C. 4511.33(A).
 {¶ 14} The trial court concluded that this evidence was sufficient to portray probable cause of a "marked lanes" violation. Defendant challenges that finding, arguing that the evidence was too unspecific as to how far across the line markers Defendant's vehicle traveled and whether those events were merely momentary or were more substantial. He relies on the holdings in State v. Brite (1997), 120 Ohio App.3d 517;State v. Hiler (1994), 96 Ohio App.3d 271; and State v. Gullett (1992),78 Ohio App.3d 138.
 {¶ 15} Brite, Hiler and Gullett stand for the proposition that de minimus crossings of line markers, absent other evidence of erratic driving or some danger that resulted, are insufficient to portray probable cause of a marked lanes violation sufficient to justify a warrantless stop under Whren and Erickson. Those holdings exhibit some concern that such events are only a pretext for a stop, and should be rejected as such in keeping with the principles and prohibitions of theFourth Amendment.
 {¶ 16} Whren and Erickson rejected a pretext inquiry when probable cause is shown, but they did not lower the standard for probable cause. That standard is whether the police officer possessed information sufficient to cause a prudent person to believe that the particular violation of law at issue was taking place. Beck v. Ohio (1964),379 U.S. 89, 85 S.Ct. 223.
 {¶ 17} Since Whren and Erickson were decided, and possibly as a result, officers now often stop a vehicle for a traffic violation that's not ordinarily the basis for a citation at all because it's so trivial. One sometimes employed is a "license light" violation. Another is a failure to signal a turn, even though no particular hazard resulted from the failure. The regular use of these tactics to investigate suspected drug offenses can only add to the sense of unfairness felt by many persons who live in those parts of a community identified as "high drug" areas where such stops most often occur. Those same concerns wouldn't seem to apply here. More importantly, however, we believe that the probable cause required for the stop was shown.
 {¶ 18} In State v. Schweiterman (Feb. 7, 2003), Darke App. No. 1588, we addressed a claim similar to Defendant's claim that the movements of his vehicle that Sgt. Luebbers observed were insufficient to constitute probable cause of a violation of R.C. 4511.33, stating:
 {¶ 19} ". . . Ohio's `marked lanes' statute requires a driver to remain in a single lane `as nearly as is practicable.' In this context, the word `practicable' means `performable, feasible or possible.' Statev. Hodge, 147 Ohio App.3d 550, 2002-Ohio-3053. As the Seventh District explained in Hodge:
 {¶ 20} `The legislature did not intend for a motorist to be punished when road debris or a parked vehicle makes it necessary to travel outside the lane. Nor, we are quite certain, did the legislature intend this statute to punish motorists for traveling outside their lane to avoid striking a child or animal. We are equally certain that the legislature did not intend to give motorists the option of staying within their lane at their choosing. Common sense dictates that the statute is designed to keep travelers, both in vehicles and pedestrians, safe. The logical conclusion is that the legislature intended only special circumstances to be valid reasons to leave lane, not mere inattentiveness or carelessness. To believe that the statute was intended to allow motorists the option of when they will or will not abide by the lane requirement is simply not reasonable.' Id., at 558." Schweiterman, pp. 5-6. We further stated: "Indeed, absent any readily apparent cause for a motorist to have strayed from his lane of travel, a police officer reasonably may infer that it was practicable for the motorist to have stayed in one lane. Consequently, Schweiterman committed an apparent traffic violation in the present case, as he crossed the edge line, three times when it appears to have been practicable for him to have stayed entirely within a single lane." Id., at pp. 6-7.
 {¶ 21} Sgt. Luebbers testified that Defendant's vehicle crossed the edge lines of his lane of travel not three but four times, weaving from one side to the other in the process. His vehicle crossed the line each time by one tire width, according to Sgt. Luebbers, who also stated that he could see no purpose for those movements. (T. 9). These are, in our view, facts sufficient to create probable cause of an R.C. 4511.33(A) violation that permitted Sgt. Luebbers to stop Defendant under the rule of Whren and Erickson. No Fourth Amendment violation is shown.
 {¶ 22} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 23} "The trial court erred by using the substantial compliance test rather than the strict compliance test when determining whether or not the field sobriety tests given in this case provided probable cause for an arrest for operating a motor vehicle under the influence of alcohol."
 {¶ 24} Sgt. Luebbers had Defendant submit to three field sobriety tests: the HGN test of his eyes, the one-leg stand test, and the walk-and-turn test. Based on Defendant's performance as judged by Sgt. Luebbers, and his other observations concerning Defendant — bloodshot eyes and an odor of alcohol on his breath, and his admission that he'd had "a couple" of drinks — Sgt. Luebbers arrested Defendant on a charge of DUI.
 {¶ 25} A warrantlees arrest is illegal and the evidence it produces is subject to suppression absent probable cause to believe that the person arrested committed a violation of law. A probable cause inquiry looks to all the relevant facts and circumstances. When the issue is whether the person arrested is under the influence of alcohol, for purposes of a DUI violation, the person's performance in sobriety tests are important circumstances to be considered. However,
 {¶ 26} "In order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." Homan, paragraph one of the Syllabus by the Court.
 {¶ 27} Homan rejected a substantial compliance standard in favor of a strict compliance standard for field sobriety tests because "it is well-established that in field sobriety testing even minor deviations from the standardized procedures can severely bias the results." Id., at p. 426. That bias makes those results "inherently unreliable." Id., at p. 424.
 {¶ 28} The motion to suppress that Defendant filed on March 8, 2002, asked the court to suppress evidence of any observations and opinions of law enforcement officers regarding his sobriety or "alcohol and or drug level." A handwritten entry on the motion states: "4/12/02: Amended to include non-compliance with the Field Sobriety Tests Standards as set by NHTSA."
 {¶ 29} Homan acknowledged the standardized test manuals published by the National Highway Transportation Safety Agency ("NHTSA") as an authoritative source for the procedures to be followed in field sobriety tests. Homan, at p. 424, note 4. Homan requires strict compliance with such procedures as a condition for admissibility of evidence of a defendant's performance in field sobriety tests when that evidence is offered as proof of intoxication.
 {¶ 30} Sgt. Luebbers was questioned extensively in his direct and cross-examination concerning the procedures he generally follows and those he specifically followed when Defendant performed the three field sobriety tests. The State offered no evidence of what the applicable NHTSA standards are.
 {¶ 31} In his summation to the court on the motion to suppress, defense counsel pointed to a number of matters which in his "opinion" demonstrate that Sgt. Luebbers failed to strictly comply with NHTSA standards in the field sobriety tests he administered to Defendant. (T. 55-60). Counsel neither cited the court to the provisions concerned nor offered evidence of the NHTSA standards.
 {¶ 32} When the court overruled the motion to suppress it found that "there is significant or substantial compliance with the requirements for performing those tests and the court does feel that there was sufficient compliance to allow those tests to be . . . used in evidence." (T. 62). We agree that the trial court erred when it applied the substantial compliance test that Homan rejected instead of the strict compliance test Homan requires. Therefore, we will reverse Defendant's conviction and remand for further proceedings on his motion to suppress.
 {¶ 33} The motion to suppress contained sufficient factual allegations to put the court and the prosecutor on notice of Defendant's claim that Sgt. Luebbers failed to strictly comply with applicable standards in ordering Defendant to perform the three field sobriety tests. State v. Shindler (1994), 70 Ohio St.3d 54. The State was then required to offer evidence to rebut the allegation. Xenia v. Wallace
(1988), 37 Ohio St.3d 216. That would require some proof of what the standards are, but the State offered none. It might have done so through the testimony of Sgt. Luebbers, who the State offered as an expert witness, and pursuant to Evid.R. 702(C)(3), which requires an expert opinion founded on a test to also show that "[t]he particular procedure, test or experiment was conducted in a way that will yield an accurate result."
 {¶ 34} Defendant failed to object to Sgt. Luebbers opinions and the basis on which he offered them. Therefore, he has waived any right to argue on appeal, as he does, that Sgt. Luebbers did not strictly comply with NHTSA standards. Indeed, lacking evidence of what the applicable standards are, we are unable to resolve the issue.
 {¶ 35} On remand, the trial court may conduct further proceedings on the motion to suppress and hear evidence or arguments relevant to the question the motion required the court to decide: whether the field sobriety tests Defendant performed were conducted in strict compliance with NHTSA standards. Alternatively, if the court finds that the totality of the facts and circumstances apart from the results of the field sobriety tests Defendant performed presented probable cause to arrest him for a DUI violation, the court may deny the motion on that finding.Homan.
 {¶ 36} The second assignment of error is sustained.
 Conclusion {¶ 37} Having sustained the second assignment of error, we will reverse Defendant's conviction and remand for further proceedings on the charge against him.
FAIN, P.J. and WOLFF, J.