OPINION
{¶ 1} This matter comes for consideration upon the record in the trial court and the parties' briefs. Appellant Joseph Strausser appeals the decision of the trial court denying his motion to suppress the results of a breath test and finding him guilty of violating R.C. 4511.19(A)(3). The issue we must resolve is whether a copy of a certified copy that was contained in a group of exhibits attached to a custodial certificate executed by the records custodian at the Austintown Police Department is sufficient to establish that the solution used to calibrate the instrument was approved by the director of the Department of Health.
 {¶ 2} The purpose behind the certification requirement under Evid.R 902 is to assure that the government document is a true and accurate copy of the original. This goal is defeated when the certification fails to specifically identify the document in question because it presents the appearance that the steps of actually comparing the copy with the original has been omitted. Accordingly, the certification of the documents in this case do not comply with the requirements under Evid.R. 902. Because the document was not properly authenticated, we must reverse the decision of the trial court overruling Strausser's motion to dismiss.
 Facts and Standard of Review {¶ 3} Strausser was arrested for violating R.C. 4511.19(A)(1) and (A)(3), driving under the influence, and R.C. 4511.33(A), failing to drive within marked lanes. Following his arrest, Strausser was taken to the Austintown Police Station where he submitted a breath sample for a breathalyzer test on the BAC Datamaster. Strausser registered a .142 on the breath test machine.
 {¶ 4} Strausser filed a motion to suppress the test results challenging, among other things, the solution used to calibrate the testing instrument. More specifically, Strausser alleged that the solution was not approved by the Director of the ODH and/or had expired as it was used beyond three months after its date of first use or beyond the manufacturer's expiration date. The trial court conducted a hearing and denied the motion. Strausser entered a no contest plea to OMVI under 4511.19(A)(3) and the other charges were dismissed.
 {¶ 5} As a preliminary matter, because the audiotape of the suppression hearing was inaudible, it was impossible for the proceedings in this matter to be transcribed. However, Strausser, the state, and the trial court agreed to create a stipulated record pursuant to App.R.9. In doing so, the parties agreed as follows:
 {¶ 6} "The only evidence offered to establish that the solution that was used to calibrate the instrument was approved by the director of the Department of Health was a copy of a certified copy that was contained in a group of exhibits attached to a custodial certificate executed by the records custodian at the Austintown Police Department."
 {¶ 7} Appellate review of a motion to suppress presents mixed issues of law and fact. State v. Jedd (2001),146 Ohio App.3d 167, 171. When conducting that review, appellate courts must accept a trial court's findings of fact if they are supported by competent, credible evidence. State v. Winand (1996),116 Ohio App.3d 286, 288. Accepting those facts as true, the reviewing court must then independently determine whether the trial court's decision met the applicable legal standard. State v. Santini
(2001), 144 Ohio App.3d 396, 406. However, decisions dealing with the admissibility of evidence are left to the trial court's sound discretion. State v. Tibbetts (2001), 92 Ohio St.3d 146, 160. Unless the trial court clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the trial court's decision. State v.Issa (2001), 93 Ohio St.3d 49, 64. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157.
 Authentication of Government Record {¶ 8} As his sole assignment of error, Strausser alleges:
 {¶ 9} "The Trial Court erred in overruling the Defendant/Appellant's Motion to Suppress wherein Defendant-Appellant sought to exclude the breath test results on the grounds that the State of Ohio failed to establish substantial compliance with O.A.C. 3701-53-04(A)(1) (A)(2) in a prosecution for violation of O.R.C. 4511.19(A)(3)."
 {¶ 10} Strausser specifically argues that the trial court erred when it determined that the copies of the calibration solution certificates introduced into evidence were admissible as they did not comply with the Rules of Evidence. Because these documents were inadmissible, he argues, the State failed to prove compliance with the Ohio Department of Health's regulations and, therefore, the results of the BAC test were inadmissible.
 {¶ 11} R.C. 3701.143 authorizes the Department of Health to promulgate regulations concerning chemical analysis of a person's blood, urine, breath, or other bodily substances in order to ascertain the presence and amount of alcohol. Accordingly, the Department of Health has promulgated Ohio Adm. Code 3701-53-04
through 3701-53-09. It is incumbent upon the State to demonstrate compliance with those regulations before the results of a breath test given to an accused are admissible in evidence against a criminal defendant. State v. Pagan (Nov. 10, 1999), 7th Dist. No. 97 CA 80, at 2. However, the State need only prove substantial compliance with the administrative regulations.State v. Plummer (1986), 22 Ohio St.3d 292, 294. Once the State proves substantial compliance, the defendant has the burden of proving prejudice by less than literal compliance. Id. at 295.
 {¶ 12} Ohio Adm. Code 3701-53-04(A) requires that the breath-testing machine be calibrated "no less frequently than once every seven days" by using "an instrument check solution containing ethyl alcohol approved by the director of health." In order to demonstrate that the instrument check solution used to calibrate the machine was approved by the director of health, the director must produce a document certifying that the solution used to calibrate the machine was proper. Columbus v. Robbins
(1989), 61 Ohio App.3d 324, 328. In order to comply with this requirement, the State commonly produces a "batch and bottle affidavit" or a properly authenticated calibration solution certificate. Pagan at 2.
 {¶ 13} "The admission of this affidavit or authenticated certificate demonstrates that the breath testing equipment was calibrated in substantial compliance with the applicable Department of Health regulations and assures the accuracy of the breath test results. City of Columbus v. Carroll ([Aug. 27] 1996), Franklin App. No. 96APC01-90, unreported [1996 WL 492979]. The importance of this point cannot be overstated since the accuracy of the test results is a critical issue in determining the guilt or innocence of the defendant. Defiance v. Kretz
(1991), 60 Ohio St.3d 1, 3. Conversely, when there is no properly authenticated certificate or an affidavit regarding the viability of the calibration solution, substantial compliance with the regulations is not proven and the results of the breath test must be excluded. State v. Bauer (September 13, 1996), Ottawa App. No. OT-95-050, unreported [1996 WL 520057], citing Robbins,
supra at 328 [572 N.E.2d 777]." Pagan at 3.
 {¶ 14} Evid.R. 901(A) states that all evidence must be properly authenticated before it is admissible into evidence. Authentication lays the foundation for admissibility by connecting the particular evidence sought to be introduced to the issues or persons involved in the trial. Staff Note to Evid.R. 901(A). Exhibits are properly authenticated when there is evidence sufficient to support a finding that the matter in question is what the proponent claims. Hall v. Johnson (1993),90 Ohio App.3d 451, 455. Authenticity is normally demonstrated by extrinsic evidence unless the evidence is self-authenticating as provided in Evid.R. 902. For example, an original calibration solution certificate is self-authenticating under Evid.R. 902(1) as it is a public document bearing the seal of the Ohio Department of Health. With regards to copies of public documents:
 {¶ 15} "The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form if otherwise admissible, may be proved by copy, certified as correct in accordance with Rule 902, Civ.R. 44, Crim.R. 27 or testified to be correct by a witness who has compared it with the original. If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given." Evid.R. 1005.
 {¶ 16} This specifically defines the types of extrinsic evidence a party must use to prove the authenticity of a particular public record before that record is admissible. SeeRobbins; Pagan; Bauer. Accordingly, the calibration solution certificates the State attempted to introduce into evidence must be admissible pursuant to Evid.R. 1005.
 {¶ 17} In the present case, since the record could not be transcribed, the parties stipulated that a copy of a certified copy of the Director of Health's approval was contained in a group of exhibits attached to a custodial certificate executed by the records custodian. Significantly, there is no mention of any testimony given regarding the authentication of this document in the parties' stipulated record created pursuant to App.R. 9. Further, the custodian's statement, which is in the record, fails to identify the individual copied public documents it purported to authenticate.
 {¶ 18} The Eleventh District found a similarly generic certification of a group of documents insufficient to properly authenticate the documents reasoning:
 {¶ 19} "The purpose behind the certification requirement under Evid.R. 902 is to assure that the document is a true and accurate copy of the original. Such a goal is defeated when the certification fails to specifically identify the document in question because it presents the appearance that the step of actually comparing the copy with the original has been omitted. Thus, there are no indicia of reliability that the custodian actually compared the copy with the original in order to assure that it is what it purports to be. See Dayton v. Dabney (Apr. 7, 1989), Montgomery App. No. 11128, unreported, at 5, 1989 WL 33105." Aurora v. Lesky (1992), 79 Ohio App.3d 568 at 571.
 {¶ 20} The court continued:
 {¶ 21} "Several problems may arise when the document in question is not specifically referenced. For instance, in Statev. Burton (Feb. 27, 1985), Morrow App. No. CA-624, unreported, the document which the state sought to authenticate was an application for a salesperson's license. The cover letter attempting to certify the application identified an application for a 1982 Ohio dealer license. The court held that:
 {¶ 22} `Nowhere upon the face of the cover letter of the Bureau of Motor Vehicles can this court find a shred of evidence to determine that it is certifying to the authenticity of the application in question. The letter does not identify or describe the application in question in any manner. * * * ` Id. at 5.
 {¶ 23} "The mistake in Burton, supra, demonstrates perfectly the logic behind the necessity of identifying the document being certified: one, to ensure that the correct document is being copied and certified; and two, to make sure that the custodian actually performs the task of comparing the copy and original document to confirm the accuracy." Id. at 571.
 {¶ 24} However, the court went on to explain.
 {¶ 25} "For most of the documents in the instant case, in the absence of a proper certification that the documents were true and accurate copies of the originals, there must be an alternate method of authentication by way of extrinsic evidence pursuant to Evid.R. 901. For example, the arresting officer testified as to the authenticity of his own certificate from the Department of Health, indicating that he underwent training to administer the breath test. Since this document was within the knowledge of the arresting officer, he was qualified to testify as to its authenticity. Therefore, pursuant to Evid.R. 901(B)(1) this document was admissible by way of extrinsic evidence." Id. at 572.
 {¶ 26} In the present case, the stipulated record fails to indicate how the State offered proof of either proper certification of the document by the custodian of records or extrinsic evidence of its authenticity. Accordingly, following the logic of the Aurora court, we conclude the State did not meet its burden of proving substantial compliance.
 {¶ 27} Accordingly, Strausser's sole assignment of error is meritorious. The judgment of the trial court is reversed and Strausser's conviction is vacated.
Donofrio, J., concurs.
Vukovich, J., dissents. See dissenting opinion.
VUKOVICH, J., dissenting:
 {¶ 28} I respectfully dissent from the conclusion my colleagues reach. I disagree with the majority's reliance on theAurora case and their holding that the state failed to offer proof of "proper certification of the document by the custodian of records" at the suppression hearing. See ¶ 26. As such, I would affirm the trial court's decision.
 {¶ 29} In 1994, the Second Appellate District declined to follow the holding in the Aurora case. State v. Hiler (1994),96 Ohio App.3d 271, 276. In Hiler, the appellate court held that documents were properly certified under Evid.R. 902 even though the attestation attached to the documents did not identify or describe the documents it purported to authenticate. Id. TheHiler court stated that although attaching multiple documents to an attestation "is not the best method of certification, in the absence of an assertion of tampering or evidence contradicting the records' correctness, it is not error for the trial court to approve this method of certification. Id. at 277, citing State v. Kennedy (June 4, 1993), 11th Dist. No. 92-L-101; State v. Clites (1991), 73 Ohio App.3d 36; State v.Madlinger (Jan 26, 1990), 2d Dist. No. 11484; State v.Morrison (1982), 2 Ohio App.3d 364." I find this holding and reasoning more persuasive than the Aurora holding and reasoning.
 {¶ 30} In applying the Hiler holding to the instant matter, the trial court did not error in admitting the evidence. The attestation attached to the copies states:
 {¶ 31} "I do hereby certify and attest under seal that I am the custodian of the official police records of the Austintown Township Police District, Austintown, Ohio, and I personally compared the original document(s) with the attached (copies) and find that the same is (are) true and accurate and would attest to the same in open court as being self-authenticating under Evid.R. 902." State's Exhibit B Custodian Certification.
 {¶ 32} There is a seal at the bottom left-hand corner of the document and a signature of execution. This document was stapled to a number of exhibits. Furthermore, Strausser's arguments assert no contention of evidence tampering or evidence contradicting the records' correctness. Thus, the exhibits were properly authenticated and the state met its burden of proving substantial compliance.
 {¶ 33} Accordingly, for the reasons stated above, I would overrule the assignment of error and would affirm the trial court's denial of the motion to dismiss.